UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KANWARPAL SINGH,<br>Petitioner,<br>v.<br>MOISES BECERRA, ET AL.,<br>Respondents. | No. 1:26-cv-01771-KES-FJS (HC)<br>(A-Number: 216-176-998)<br>FINDINGS AND RECOMMENDATION THAT THE PETITION FOR WRIT OF HABEAS CORPUS BE GRANTED IN PART AND RESPONDENTS BE ORDERED TO PROVIDE PETITIONER WITH A BOND HEARING<br>(ECF No. 1)<br>[FOURTEEN (14) DAY OBJECTION DEADLINE] |

Petitioner Kanwarpal Singh ("Petitioner") is an immigrant detainee, proceeding with counsel, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*See* ECF No. 1.)

I. BACKGROUND

Petitioner, a native and citizen of India, appears to have entered the United States on or about February 12, 2018. (*See* ECF No. 10-1 at 3.) Petitioner encountered immigration officials and was released on bond on March 23, 2018. (*Id.*)

On August 17, 2021, an immigration judge ordered that Petitioner be removed from the United States to India. (*Id.*) Petitioner subsequently filed an appeal of the immigration judge's

order of removal on September 13, 2021. (*Id.*) The appeal remains pending with the Board of Immigration Review ("Board").[1]

On January 7, 2025, Petitioner plead *nolo contendere* to assault with a deadly weapon under Cal. Penal Code § 245(a)(1). (*See* ECF Nos. 17 at 1, 17-1 at 37.)[2] On September 14, 2025, Petitioner entered the custody of U.S. Immigration and Customs Enforcement ("ICE"). (ECF No. 1 at 2.)

On March 4, 2026, Petitioner petitioned for a writ of habeas corpus raising the following claims: (1) unlawful detention without statutory authority, (2) prolonged detention without a hearing, (3) unlawful detention because removal is not reasonably foreseeable, (4) arbitrary re-detention, and (5) warrantless entry into Petitioner's home. (*See generally* ECF No. 1.)

On July 16, 2026, the assigned district judge denied the petition "to the extent that it argues petitioner's re-detention violated due process and lacks statutory authority." (ECF No. 20.) The assigned district judge further explained that Petitioner is subject to detention under 8 U.S.C § 1226(c) and referred Petitioner's remaining claims to the undersigned. (*Id.* (citing ECF No. 17-1).)

On August 4, 2026, Petitioner moved to supplement the record with an attached memorandum of points and authorities, as well as a declaration from Petitioner. (*See* ECF No. 24.) Petitioner insists that he is entitled to an individualized bond hearing because his detention has become unreasonably prolonged. (*Id.* at 3.) Petitioner further declares that he acted in self-

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited October 9, 2026, using Petitioner's A-Number and nationality). *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (holding information may be judicially noticed where "it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [] therein.").

[2] This order focuses on Petitioner's January 7, 2025, *nolo contendere* plea. The court is aware that Petitioner also has a previous arrest for assault with a deadly weapon from 2022. (ECF No. 15 at 3.) Respondents acknowledge that this charge was dismissed in 2024. (ECF No. 17 at 2.) The court is also aware that Petitioner "was arrested for misdemeanor 602.5(A) PC – ENTER A NONCOMMERCIAL DWELLING and misdemeanor 1203.2(A) PC – Probation Violation" on August 28, 2025. (ECF No. 10-1 at 3.)

defense during the January 2025 event that led to his conviction, and that he never received the notices to appear from ICE. (*Id.*)

On August 26, 2026, Petitioner filed additional supplemental briefing. (*See* ECF No. 25.) Petitioner attached to that August 26 filing a record of Sacramento County Superior Court's inquiry into Kanwarpal Singh criminal history that reflects no criminal record information. (*See* ECF. 25 at 4.)

On September 1, 2026, Respondents filed a notice of custody determination indicating that an ICE officer determined that "pending a final administrative determination in [Petitioner's] case," the Department of Homeland Security will continue to detain Petitioner. (ECF No. 26-1.) Petitioner requested that an immigration judge review this custody determination. (*Id.*)

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 8 U.S.C. § 2241(c)(3). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the initial burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III. DISCUSSION

The district court's July 15, 2026, minute order resolves two of Petitioner's five claims: unlawful detention without statutory authority and arbitrary re-detention without due process. (ECF No. 20.) The remaining three claims—prolonged detention, unlawful detention due to removal not being available in the reasonably foreseeable future, and warrantless entry to Petitioner's home—need resolution. To address these three claims, the court must (1) determine the basis of Petitioner's detention, (2) ensure that there are no procedural impediments to judicial resolution of Petitioner's claims, and (3) evaluate the merits of Petitioner's claims.

A. BASIS OF DETENTION

In analyzing Petitioner's challenge to his detention, the court "must first identify the statutory provision that purports to confer" authority for his detention. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). 8 U.S.C § 1226 (c)(1)(A) allows the Attorney General to take into custody any alien who is deportable by reason of having committed any offense covered in 8 U.S.C. 1182(a)(2)(A). Under section 1182(a)(2)(A)(i)(I), any alien "who admits committing acts which constitute the essential elements of — a crime involving moral turpitude" is inadmissible. Here, Petitioner plead *nolo contendere* to assault with a deadly weapon under Cal. Penal Code § 245(a)(1). (ECF No. 17-1 at 37.) As the district court noted, a violation of section 245(a)(1) constitutes a "crime involving moral turpitude." (ECF No. 20 (citing *Safaryan v. Barr*, 975 F.3d 976, 988 (9th Cir. 2020).) 8 U.S.C. § 1226(c) requires mandatory detention. *Jennings v. Rodriguez*, 583 U.S. 281, 304-305 (2018).

Submitting a Superior Court of Sacramento County form indicating that a local search dated August 21, 2026, does *not* reveal a criminal record for Kanwarpal Singh, Petitioner seems to challenge the applicability of 8 U.S.C. § 1226(c). (ECF No. 25 at 4.) Yet a closer examination of the record reveals that Petitioner's prior conviction was expunged. *Compare* (ECF No. 17-1 at 23-27 (listing Baljosh Singh and Kanwarpal Singh as co-defendants in a felony complaint that alleges a violation of section 245(a)(1) of the California Penal Code as count one)), *with* (*id.* at 36-37 (noting that an individual *other than* "Baljosh Singh"—Petitioner's sole co-defendant—plead *nolo contendere* to count one on January 7, 2025, and was sentenced on January 21, 2025)),[3] *and* (*id.* at 35 (noting a March 2, 2026, expungement pursuant to Cal. Penal Code

[3] The relevant entry on this docket entry shows:

§ 1203.425).)

Notably, Petitioner does not dispute that he pleaded *nolo contendere* to the charge; he simply notes that there is no record currently available from Sacramento County Superior Court for Kanwarpal Singh. (*See generally* ECF No. 25; *see also* ECF No. 24 at 9.)

The court notes that an expunged plea of *nolo contendere* still satisfies section 1182(a)(2)(A)(i)(I)'s condition of admitting commission of the facts that constitute the essential elements of a crime of moral turpitude. *See Ramirez-Castro-INS*, 287 F.3d 1172, 1174 (9th Cir. 2002) ("[A]s a general rule, an expunged conviction qualifies as a conviction under the [Immigration and Naturalization Act]."); *see also Lott v. U.S.*, 367 U.S. 421, 426 (1961) ("[A] plea of nolo contendere … admit[s] every essential element of the offense that is well pleaded in the charge.") (internal citations and quotations omitted). Consequently, this court agrees with the district court's prior conclusion that Respondents' authority to detain Petitioner is based on 8 U.S.C. § 1226(c).

B. <u>EXHAUSTION OF ADMINITRATIVE REMEDIES</u>

Resolution of Respondents' invocation of failure to exhaust administrative remedies (ECF No. 14 at 4-5) turns on the nature of Petitioner's challenge. More specifically, the court differentiates the exhaustion of a challenge to applicability of 8 U.S.C. § 1226(c) from a challenge to the length of Petitioner's detention (assuming 8 U.S.C. § 1226(c) applies).

---

<table>
<tr><th colspan="2">Name</th><th>Date & Time</th><th>Court</th><th>Dept</th><th>Calendar</th><th>Def</th></tr>
<tr><td colspan="2">ASSEMBLY BILL EXPUNGE</td><td>1/7/2025 1:35 PM</td><td>34100</td><td>63</td><td>1D</td><td>Y</td></tr>
<tr><th>Reason</th><th>Reason Description</th><th>Outcome Code</th><th colspan="4">Outcome Description</th></tr>
<tr><td>TRC</td><td>TRIAL READINESS CONFERENCE</td><td>PLED</td><td colspan="4">DEFENDANT PLED TO CHARGE(S)</td></tr>
<tr><td colspan="2">TRIAL READINESS CONFERENCE(NO BAIL STYD BW)</td><td colspan="5">DFT PRS IC;TD VAC;COP;NG PLEA W/D;NOLO CT1:PC245 (A)(1) MISD FOR OFF:1Y INF PROB W/45D CJ SWP,VICT REST TBD,NCO,JS:</td></tr>
<tr><td>SC</td><td>SETTLEMENT CONFERENCE</td><td>REFPC29810</td><td colspan="4">MATTER REFERRED TO PROBATION PURSUANT TO PC 29810</td></tr>
<tr><td colspan="2"></td><td colspan="5">012125 135 63</td></tr>
<tr><td>TIMECOUNT</td><td>TIME COUNT/WAIVER CALCULATION</td><td>LTW</td><td colspan="4">LTW</td></tr>
<tr><td colspan="2"></td><td colspan="5"></td></tr>
</table>

(ECF No. 17-1 at 37.) *See also* (*id.* at 33-35 (showing separate docket entries for sole co-defendant Baljosh Singh).)

Where a "petitioner fails to exhaust prudentially required administrative remedies, then 'a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies,'" unless exhaustion is excused. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Although the court found in the previous section of this order that Respondents' authority to detain Petitioner falls under 8 U.S.C. § 1226(c), it appears that Petitioner may seek to challenge the applicability of that statute. (ECF No. 25 at 4.) "Anyone who believes that he is not covered by § 1226(c) may … ask for what is known as a '*Joseph* hearing'" in immigration court where "that person 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.'" *Jennings*, 583 U.S. at 289 (quoting *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003)). Thus, if Petitioner asserts that section 1226(c) does not apply in his case, he must first exhaust his administrative remedies at such a *Joseph* hearing. *See Osman Hernadez Martinez, Petitioner, v. U.S. Attorney General/ICE, Respondents,* No. 1:26-CV-02570-KES-SAB-HC, 2026 WL 2225711, at *1-2 (E.D. Cal. Aug. 3, 2026).

While Petitioner must exhaust his administrative remedies when challenging applicability of section 1226(c), Petitioner may not be so constrained when challenging the constitutionality of his detention assuming section 1226(c) applies. Given that the immigration courts have not evinced a willingness to evaluate as-applied due process violations in other mandatory detention settings, *see, e.g., Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025), and given that district courts have waived exhaustion based on that unwillingness, *see, e.g., J.S.M.R. v. Warden of Golden State Annex Detention Facility,* No. 1:26-CV-01474-KES-SAB (HC), 2026 WL

948525, at *1 (E.D. Cal. Apr. 8, 2026), this court does not recommend dismissing the Petition on failure to exhaust grounds as to Petitioner's prolonged detention claims.

C. PROLONGED DETENTION

The court now turns to the merits of two of Petitioner's three remaining claims: prolonged detention and unlawful detention due to removal not being available in the reasonably foreseeable future. The court evaluates these claims facially and then as applied. The Supreme Court has already affirmed the constitutionality of detention under 8 U.S.C. § 1226(c) in response to a facial challenge. *Demore v. Kim*, 538 U.S. 510, 522, 529 (2003). Petitioner's "reasonably foreseeable" removal language apparently comes from *Zavydas v. Davis*, 533 U.S. 678, 698 (2001) ("[W]e conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). But *Zadvydas* addresses detention of aliens subject to final removal orders under 8 U.S.C. § 1231. *Jennings*, 583 U.S. at 298. Petitioner is not subject to a final removal order and the basis of his detention has not shifted to section 1231. *Avilez v. Garland*, 69 F.4th 525, 530-531 (9th Cir. 2023). Hence, Petitioner's reliance on *Zadvydas*' "reasonably foreseeable" removal language is misplaced.

Because Petitioner's facial challenge to detention under 8 U.S.C. § 1226(c) fails, the court moves to an as-applied due process analysis. The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore*, 538 U.S. at 531; *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Moreover, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz*, 53 F.4th at 1206.

There is a split among the circuits that have addressed whether the Due Process Clause affords section 1226(c) detainees a right to a bond hearing. *Compare Black v. Decker*, 103 F.4th 133, 148-50, 155 (2d Cir. 2024), *with Banyee v. Garland*, 115 F.4th 928, 933-34 (8th Cir. 2024).

The Ninth Circuit has not taken a side in this circuit split. Although the Ninth Circuit has clarified that there is no statutory right to a detention hearing under section 1226(c), whether the Due Process Clause imposes a right to a detention hearing is an open question in this Circuit. *Avilez*, 69 F.4th at 538. *See also Rodriguiez Diaz v Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) ("[I]t remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute") (emphasis in original). Nevertheless, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Lopez v. Garland*, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) (quotation omitted). *But see Keo v. Warden of the Mesa Verde ICE Processing Ctr.*, No. 24-cv-919-HBK, 2025 WL 1029392, at *8 (E.D. Cal. April 7, 2025) (holding that there was no due process violation in continued detention under section 1226(c) without a bond hearing because the ongoing removal proceedings serve their intended purposes and are not intended to incarcerate for other reasons) (citations and quotations omitted). In other words, the Supreme Court's "conclusion [in *Demore*] that § 1226(c) is constitutional in some of its applications does not mean that the Court 'does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to [ ] detention without a bond hearing.'" *Carballo v. Andrews*, No. 1:25-cv-0978 KES EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022)) (emphasis in original). Hence, this court recommends evaluating Petitioner's as-applied prolonged detention claim on the merits.

There is an open question on the appropriate test to use when evaluating a due process claim in immigration detentions like Petitioner's. Many courts have applied the *Mathews*[4] test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206 (noting that the government sought to use a substitute for the *Mathews* test that was "not specific" but "focuses more exclusively on the government's asserted interests in detaining aliens who are subject to removal"). Yet the Supreme Court has resolved some constitutional challenges

[4] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

to immigration detention without invoking *Mathews*. *See, e.g., Demore*, 538 U.S. at 523, 526–29; *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims"). *But see Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Supreme Court applied *Mathews* in considering a due process challenge to an immigration exclusion hearing). And in *Rodriguez Diaz* the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. 53 F.4th at 1206-07. Thus, the Court finds application of the *Mathews* test in this case appropriate.[5]

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. *Mathews*, 424 U.S. at 335. "[I]n evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." *Rodriguez Diaz*, 53 F.4th at 1208. Instead, "[t]he process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. It is "important not to

[5] To be sure, there are alternative tests formulated to evaluate the due process issues of prolonged detention. *See, e.g., Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (resolving a prolonged detention claim by evaluating "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government"). These factors are largely incorporated in the *Mathews* test and, in the context of a *Mathews* analysis, the Ninth Circuit elaborated on the factors' relative strengths and weaknesses in *Rodriguez Diaz*.

overstate the strength of Petitioner's showing under the first *Mathews* factor." *Id.* at 1213.

Here, Petitioner has been in the custody of immigration authorities for approximately thirteen months. Not including the time Petitioner was incarcerated for violation of California Penal Code § 245(a)(1), Petitioner remained largely at liberty from his release on bond in May 2018 until his arrest by immigration authorities in September 2025. (*See* ECF No. 17-1 at 37; *see also* ECF Nos. 10 at 2, 10-1 at 2.) During those several years of liberty, Petitioner presumably formed attachments to family and the community. *See Carballo,* 2025 WL 2381464, at *4. It follows that Petitioner has a legitimate private interest in remaining free from detention. *Zadvydas* 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Moreover, immigration authorities have detained Petitioner for over one year. When analyzing a detention under section 1226(a) of a similar duration, the Ninth Circuit "assume[d] that [petitioner's] detention qualifies as 'prolonged' in a general sense." *Rodriguez Diaz*, 53 F.4th at 1207 (citing, *inter alia*, *Diouf II*, 634 F.3d at 1091). And the mandatory nature of detention under section 1226(c) frustrates some of the characteristics that the Ninth Circuit held were sufficient to counterbalance the assumed "prolonged" detention in *Rodriguez Diaz*, 53 F.4th at 1208. Still, like *Rodriguez Diaz*, Petitioner is subject to an August 2021 order of removal and it appears that the lengthy appeal process is attributable to Petitioner. *Compare id.* at 1207-08, *with* (ECF No. 10 at 2 (showing that Petitioner failed to appear for immigration hearings on two separate occasions)).[6] In evaluating these competing factors, the court concludes that this first *Mathews* factor does not favor either party.

In the second *Mathews* factor, the court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The court recognizes that Petitioner's triggering event for detention under section 1226(c) is a plea of *nolo contendere* to a

[6] Petitioner contends that he did not receive a notice to appear for either the July 2025 or August 2025 hearings and Respondents do not attach exhibits demonstrating that these notices were issued. (ECF No. 24 at 3; *see also* ECF No. 10.)

charge under section 245(a)(1) of the California Penal Code. (*See* ECF No. 14 at 2.) A collateral admission of the essential facts of a qualifying crime reduces the risk of an erroneous deprivation of liberty according to the terms of section 1226(c). But if the inquiry is broadened to a forwarding-looking assessment of risk of danger or flight once the duration of a section 1226(c) detention becomes prolonged, the "risk of an erroneous deprivation of [petitioners'] interest is high" where "[they have] not received any bond or custody redetermination hearing[.]" *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal Jan. 30, 2020) (discussing 8 U.S.C. § 1226(c)). *Accord Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so."). As stated above, there is no indication that Petitioner received a bond hearing since being taken into immigration custody roughly thirteen months ago.[7] Because Petitioner is subject to mandatory detention and because resolution of Petitioner's administrative appeal of his removal order has taken and a considerable amount of time and may yet take considerably more time, *see Banda v. McAleenan,* 385 F. Supp. 3d 1099, 1119 (W.D. Wash. 2019) (noting that an appeal of a removal order with the Board and subsequent review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing), it appears to the court that almost any additional procedural safeguard at this point in Petitioner's detention would add value. *Black*, 103 F.4th at 153 (so holding and reasoning that the most obvious additional safeguard "would be an individualized bond hearing at which an IJ can consider the noncitizen's dangerousness and risk of flight."). In absence of means for Petitioner to test the propriety of detention should circumstances change, the court finds that

---

[7] The court is aware of the September 1, 2026, determination that Petitioner be detained. (ECF No. 26-1.) This form does not indicate the basis of the determination or how the determination was reached (e.g., who was held to what burden of proof). The court also notes that Petitioner requested that an immigration judge review the determination. (*Id.*) The court cannot discern from the record whether further administrative review has occurred. The court will, therefore, not consider this September 1, 2026, determination a substitute for a bond hearing before an immigration court.

there is an increased risk of erroneous deprivation of Petitioner's liberty interest. *Cf. Rodriguez Diaz*, 53 F.4th at 1209 (holding that petitioner could not satisfy the second *Mathews* factor because section 1226(a) allows subsequent bond hearings on materially changed circumstances and a previous bond hearing could be administratively appealed). The second *Mathews* factor thus weighs in favor of Petitioner.

In the third *Mathews* factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's prior criminal history. (*See* ECF Nos. 17-1, 20.) The argument has merit, but that argument can be advanced at a bond hearing. Providing a bond hearing would not undercut the government's asserted interest in protecting the public or accomplishing removal; it provides a forum to substantiate those interests. Given "the minimal cost of conducting a bond hearing, and the ability of the [immigration judge] to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as [p]etitioner's." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019), *quoted in Zagal-Alcaraz*, 2020 WL 1862254, at *7. The imposition of a bond hearing after roughly thirteen months of continued detention in the face of a regulatory framework that does not allow Petitioner to seek a bond hearing does not undermine the weighty and substantial interests the government pursues here. This third *Mathews* factor tips in Petitioner's favor.

On balance, the three *Mathews* factors weigh in Petitioner's favor and outweigh the government's interest in further detention without another inquiry into whether circumstances

have changed or whether Petitioner continues to present a flight risk or danger to the community. The court thus finds that a bond hearing should be provided.

D. BURDEN OF PROOF AT BOND HEARING

The court now clarifies the burden of proof at the bond hearing. As other courts have also concluded, the undersigned finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). *See Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB (HC), 2025 WL 3187577, at *2 (E.D. Cal. Nov. 14, 2025) (citing *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011)); *see also Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under section 1226(c)). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

E. WARRANTLESS ENTRY

Citing *Payton v. New York*, 445 U.S. 573 (1980), Petitioner asserts a Fourth Amendment violation when ICE agents entered him home to make an arrest without a judicial warrant or valid consent. (ECF No. 1 at 6.) Respondents do not address this allegation in their response and Petitioner does not discuss it further in his subsequent filings. (ECF Nos. 10, 14, 17, 18, 24, 25.)

On the record submitted, the court recommends that Petitioner's Fourth Amendment claim be denied. *Payton* held that an arrest in a home without a warrant cannot be made "[a]bsent exigent circumstances." 445 U.S. at 575, 590. At bottom, *Payton* involved the exclusion of evidence seized during a pair of warrantless arrests in a home. *Id.* at 577-78, 603. *See also id.* at 591-92 (distinguishing common-law rules of arrest from the cases at issue in *Payton* because the latter cases "involve application of the exclusionary rule" where "the issue is whether certain evidence is admissible at trial"). In the immigration context, "[t]he Fourth Amendment

exclusionary rule applies in removal proceedings only (1) when the agency violates a regulation promulgated for the benefit of petitioners and that violation prejudices the petitioner's protected interests and (2) when the agency egregiously violates a petitioner's Fourth Amendment rights." *Ixchop-Perez v. Barr*, 821 Fed. Appx. 690, 693 (9th Cir. 2020) (citations and quotations omitted). Petitioner makes no allegation that a regulation was violated. And Petitioner does not explain to this court why ICE's arrest of Petitioner was an *egregious* violation of Fourth Amendment rights. Moreover, Petitioner neither identifies evidence seized when Petitioner was arrested, nor proposes a remedy tethered to the asserted Fourth Amendment violation. *See Payton*, 445 U.S. at 592 n.34 ("The issue is not whether defendant must stand trial, because he must do so even if the arrest is illegal.") (citations omitted). Given these deficiencies and the fact that the court is separately ordering a bond hearing on due process grounds, the court will recommend that Plaintiff's Fourth Amendment claim be denied.

## IV. FINDING AND RECOMMENDATION

For the foregoing reasons, the court HEREBY FINDS AND RECOMMENDS that:

(1) The petition for writ of habeas corpus (ECF No. 1) be GRANTED IN PART AND DENIED IN PART. More specifically, the court recommends that Petitioner's claim that his prolonged detention under 8 U.S.C. § 1226(c) without a bond hearing violates his due process rights be GRANTED; and that Petitioner's claims (1) that his detention under 8 U.S.C. § 1231 violates the Due Process Clause because removal is unlikely to occur in the reasonably foreseeable future and (2) that his arrest violates his Fourth Amendment rights be DENIED; and

(2) Respondents be DIRECTED to provide Petitioner with a bond hearing within fourteen (14) days before an immigration judge wherein the government must demonstrate by clear and convincing evidence, in accordance with the requirements of *Singh*, 638 F.3d at 1208, that Petitioner is not a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision; and

(3) The Clerk of the Court be directed to enter judgment in favor of the Petitioner and close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within fourteen (14) days after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated: **October 13, 2026**

UNITED STATES MAGISTRATE JUDGE